**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| NICHOLAS JEFFREY DUNN, | ) | CASE NO. 1:18-CV-1632 |
| Plaintiff, | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| COMMISSIONER OF SOCIAL SECURITY, | ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) | |

Plaintiff, Nicholas Jeffrey Dunn (hereinafter "Plaintiff"), challenges the final decision of the Commissioner of Social Security (hereinafter "Commissioner"), denying his applications for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. ("Act"). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to consent of the parties. (R. 12 & 14). For the reasons set forth below, the Commissioner's final decision is REVERSED and REMANDED for proceedings consistent with this opinion.

**I. Procedural History**

On July 22, 2015, Plaintiff filed his applications for POD, DIB, and SSI, alleging a disability onset date of January 1, 2015. (Transcript ("Tr.") 181-193). The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 120-138). Plaintiff participated in the hearing on May

15, 2017, was represented by counsel, and testified. (Tr. 35-75). A vocational expert ("VE") also participated and testified. *Id*. On September 29, 2017, the ALJ found Plaintiff not disabled. (Tr. 30). On May 11, 2018, the Appeals Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-6). On July 16, 2018, Plaintiff filed a complaint challenging the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 10, 13 & 15).

Plaintiff asserts the following assignments of error: (1) the Residual Functional Capacity ("RFC") determination was not supported by substantial evidence because the ALJ failed to appropriately weigh the opinion of Plaintiff's treating physician, Dr. Omar Elhaj, and (2) the RFC determination was not supported by substantial evidence where, after crediting the opinions of the State Agency consultants, the ALJ failed to incorporate portions of their opined limitations into his final RFC determination without explanation. (R. 10, PageID# 492).

## II. Evidence

### A. Relevant Medical Evidence[1]

#### 1. Medical Opinions Concerning Plaintiff's Functional Limitations

On September 24, 2015, State Agency psychological consultant Thomas Ruf, Ph.D., completed a mental RFC assessment finding that Plaintiff had no understanding and memory limitations, but was moderately limited in his ability to carry out detailed instructions, to maintain attention and concentration for extended periods, to work in coordination with or in proximity to others without being distracted by them, and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a

---

[1] The recitation of the evidence is not intended to be exhaustive. It includes only a recitation of the medical opinions that form the basis of Plaintiff's assignments of error.

consistent pace without an unreasonable number and length of rest periods. (Tr. 84). Dr. Ruf explained that "[Claimant] will work best if given short 2-3 step instructions and short cycle tasks. He will need to work in a separate work area. He also will need to have occasional flexibility with breaks." *Id*. In the area of social interaction, Dr. Ruf found Plaintiff was moderately impaired in his ability to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors, and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. *Id*. Dr. Ruf explained that "[t]he claimant will work best if contacts with the public and with coworkers are brief and superficial, and if he is given constructive feedback by supervisors." (Tr. 84). In the area of adaptation, Dr. Ruf found Plaintiff was moderately impaired in his ability to respond appropriately to changes in the work setting, explaining that "[t]he claimant would do best if he is notified of any changes in advance and such changes are implemented gradually." (Tr. 85).

On January 8, 2016, State Agency psychological consultant Karla Voyten, Ph.D., completed a mental RFC assessment echoing the above assessment of Dr. Ruf. (Tr. 104-107).

On May 3, 2017, Omar Elhaj, M.D. completed a checklist-style questionnaire that did not set forth Plaintiff's diagnoses or otherwise explain the limitations assessed. (Tr. 434-437). He checked boxes indicating Plaintiff had the following signs or symptoms: anhedonia or pervasive loss of interest in almost all activities; appetite disturbance with change in weight; sleep disturbance; psychomotor agitation or retardation; decreased energy; feelings of guilt or worthlessness; difficulty concentrating or thinking; thoughts of suicide; hallucinations, delusions or paranoid thinking; generalized persistent anxiety; and motor tension. (Tr. 435). He opined that Plaintiff had marked restriction in activities of daily living and social functioning. (Tr. 435-36). He checked boxes indicating Plaintiff had marked to extreme limitations in all work-related areas

3

involving mental abilities. (Tr. 436-437).

**B. Relevant Hearing Testimony**

The ALJ posed the following hypothetical question to the VE:

> I'm going to ask you a series of hypothetical questions. For each of these, assume the individual has the same age, education and experience as the claimant. The first is at all exertional levels, but it includes mental restrictions of limited to performing simple, routine and repetitive tasks, but not at a production rate pace, in other words, no assembly line work; occasional and superficial interaction with supervisors, co-workers and the public, meaning no arbitration, mediation, confrontation, negotiation, supervising others or commercial driving; and limited to tolerating few changes in the routine work setting defined as occasional.
>
> There's no past work to deal with, but based on this hypothetical, are there any jobs that this hypothetical individual could perform and, if so, could you give me examples with national numbers for each?

(Tr. 70-71).

The VE testified that such an individual could perform a number of jobs and identified the following three examples: garment sorter, Dictionary of Occupational Titles ("DOT") 222.687-014 (242,000 jobs nationally); laundry laborer, DOT 361.687-018 (439,000 jobs nationally); and marker, DOT 209.587-034 (1.9 million jobs nationally). (Tr. 71).

The ALJ inquired that if the first hypothetical were further modified to have "no interaction with the public," whether the jobs or numbers available would change. (Tr. 71). The VE responded that, "the positions identified are ones that are known by me to have no interaction with the general public so, therefore, they would still be the same numbers …." *Id*.

The ALJ posed another hypothetical with the following restrictions:

> Assume that the individual's conditions would require them to be off task 20 percent of a regular workday exclusive of normal breaks and/or more than 2 days absent monthly, including tardy arrivals and early departures. Would those two conditions, individually or together, preclude competitive work?

(Tr. 72).

The VE responded that both restrictions, either individually or collectively, would be above acceptable limits and would, therefore, be work-preclusive. (Tr. 72).

In response to a question posed by Plaintiff's counsel, the VE testified that an individual who required frequent supervision would most likely not be employable. (Tr. 73).

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when he establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that he suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work

experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent him from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent him from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§404.1520(g) and 416.920(g), 404.1560(c).

### IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2015.

2. The claimant has not engaged in substantial gainful activity since January 1, 2015, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3. The claimant has the following severe impairments: bipolar depression, anxiety disorder, and schizoaffective disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: limited to performing simple, routine, and repetitive tasks, but not at a production rate pace, in other words no assembly line work; occasional and superficial interaction with supervisors and coworkers, meaning no arbitration, mediation, confrontation, negotiation, supervising others, or commercial driving; no interaction with the public; and limited to tolerating few changes in the routine work setting, defined as occasional.

6. The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on *** 1993 and was 21 years old, which is

|     | defined as a younger individual age 18-49, on the alleged disability onset date (Ex. 1D) (20 C.F.R. § 404.1563 and 416.963). |
| --- | --- |
| 8. | The claimant has at least a high school education and is able to communicate in English (Ex. 3E) (20 CFR 404.1564 and 416.964). |
| 9. | Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968). |
| 10. | Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)). |
| 11. | The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2015, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)). |

(Tr. 17-30).

## V. Law and Analysis

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. (*Id.*) However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009).

Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

**B. Plaintiff's Assignments of Error - State Agency Psychologist Opinions**

In the second assignment of error, Plaintiff asserts the RFC determination is not supported by substantial evidence, because the ALJ did not include *all* the limitations assessed by the State Agency consultants despite ostensibly assigning those opinions great weight. (Tr. 28-29). A claimant's RFC is an indication of an individual's work-related abilities *despite* their limitations. *See* 20 C.F.R. §§ 404.1545(a).[2] The ALJ bears the responsibility for assessing a claimant's RFC, based on all of the relevant evidence. *See* 20 C.F.R. § 404.1546(c).

At the fifth and final step of the disability analysis, if a claimant cannot perform his past relevant work, it must be determined whether the claimant can adjust to other work in light of the claimant's RFC, age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At this final step, the burden shifts to the Commissioner to prove the existence of a significant number of jobs in the national economy that a person with the claimant's limitations could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999); *accord White v. Comm'r of Soc. Sec.*, 312 Fed. App'x 779 (6th Cir. 2009). An ALJ's finding that a

---

[2] Moreover, a claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner, and "[i]f the treating physician instead submits an opinion on an issue reserved to the Commissioner—such as whether the claimant is disabled, unable to work, **the claimant's RFC**, or the application of vocational factors—his decision need only 'explain the consideration given to the treating source's opinion." *Curler v. Comm'r of Soc. Sec.*, 561 Fed. App'x 464, 471 (6th Cir. 2014) (emphasis added) (*quoting Johnson v. Comm'r of Soc. Sec.*, 535 Fed. Appx. 498, 505 (6th Cir. 2013) (internal citations omitted)).

claimant can perform a significant number of jobs must be supported by substantial evidence (*i.e.* that the claimant has the vocational qualifications to perform specific jobs). *Workman v. Comm'r of Soc. Sec.*, 105 Fed. App'x 794, 799 (6th Cir. 2004) (*citing Varley v. Sec'y of Health & Varley*, 820 F.2d 777, 779 (6th Cir. 1987)). Testimony from a vocational expert—in response to a hypothetical question—may constitute such substantial evidence, so long as the hypothetical question accurately accounts for a claimant's physical and mental impairments. *See, e.g., Pasco v. Comm'r of Soc. Sec.*, 137 Fed. App'x 828, 845 (6th Cir. 2005) (*citing Varley*, 820 F.2d at 779)). However, "[t]he rule that a hypothetical question must incorporate all of the claimant's physical and mental limitations does not divest the ALJ of his or her obligation to assess credibility and determine the facts." *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007) (*quoting Redfield v. Comm'r of Soc. Sec.*, 366 F. Supp.2d 489, 497 (E.D. Mich. 2005)).

Specifically, Plaintiff asserts that State Agency psychologists Drs. Ruf and Voyten both opined that Plaintiff will work best "if given short 2-3 step instructions and short cycle tasks. He will need to work in a separate work area. He will need to have occasional flexibility with breaks." (R. 10, *citing* Tr. 84, 94, 106, 116). Plaintiff further points to the State Agency statements that Plaintiff "will work best if contacts with the public and with coworkers are brief and superficial, and if he is given constructive feedback by supervisors," and "would do best if he is notified of any changes in advance and such changes are implemented gradually." (*Id*., *citing* Tr. 85, 95, 106, 116-117).

Plaintiff asserts that the ultimate RFC finding of the ALJ did not incorporate *all* of these limitations despite the ALJ assigning great weight to the State Agency opinions. (R. 10, PageID# 513-515, *citing* Tr. 20-21, 28). The Court disagrees that the RFC did not incorporate at least some of these limitations. First, the RFC limited Plaintiff to only occasional and superficial

interaction with supervisors and coworkers, defined as "no arbitration, mediation, confrontation, negotiation, [or] supervising others …" as well as "no interaction with the public." (Tr. 21). This limitation more than adequately conveys the State Agency psychologists' opinion that contacts with the public and coworkers be brief and superficial. Further, neither Plaintiff's brief nor his reply offer any meaningful argument explaining why the RFC's requirement that there be "few changes in the routine work setting" does not adequately account for the State Agency opinions that work changes be implemented gradually. (R. 10 & 15).

The Commissioner also points out that a number of the so-called limitations assessed by the State Agency psychologists' merely observe that Plaintiff would "work best" if given constructive feedback by supervisors or when given short 2-3 step instructions and short cycle tasks. (R. 13, PageID# 537-538). The Commissioner, therefore, argues that the ALJ was "not required to accept limitations for the optimal or 'best' conditions as the only ones under which Plaintiff could perform." *Id.* at 537. The Court agrees that the ALJ was not required to create an optimal work setting for Plaintiff. "Optimal conditions, however, are not necessary ones. The RFC 'is the most you can still do despite your limitations.'" *Jakubiak v. Berryhill*, 337 F. Supp. 3d 80, 85–86 (D. Mass. 2018) (*citing* 20 C.F.R 416.945(a)(1)); *see also Gonzales v. Colvin*, 213 F. Supp. 3d 1326, 1331 (D. Colo. 2016) ("Identifying the optimal work environment for a claimant does not mean that his RFC is limited to that work setting alone."). Thus, the RFC only needed to assess the necessary conditions for Plaintiff to work—not his optimal work environment that would give him the greatest chance for success.

Nevertheless, the Commissioner paints too broadly with respect to those limitations that received the "work best" modifier. The State Agency psychologists opined that Plaintiff "will *need* to work in a separate work area. He also will *need* to have occasional flexibility with

breaks." (Tr. 84, 94) (emphasis added). Neither of these assessed limitations can reasonably be construed as denoting an optimal as opposed to a necessary work environment. Despite acknowledging these specific restrictions and according great weight to the State Agency opinions (Tr. 28), the ALJ's decision is bereft of any discussion explaining why these two limitations were not credited.

Although an ALJ is not required to discuss every piece of evidence in the record to support his decision, an ALJ must explain why he did not include the limitations from an opinion of a medical source in his determination of the claimant's RFC. *See, e.g., Moscorelli v. Colvin*, No. 1:15CV1509, 2016 WL 4486851, at *3 (N.D. Ohio Aug. 26, 2016) (*citing Thacker v. Commissioner*, 99 Fed. Appx. 661, 665 (6th Cir. 2004); *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 881 (N.D. Ohio 2011)). This is particularly important where two State Agency psychologists imposed the same restrictions, and the ALJ's decision ostensibly accorded "great weight" to those opinions without addressing why some limitations were ultimately omitted from the RFC. SSR 96-8p provides that "[t]he RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Moscorelli*, 2016 WL 4486851, at *3 (quoting SSR 96-8p, 1996 WL 374184, at *7); *see also Stubbs v. Berryhill*, No. 1:17CV2498, 2018 WL 5255140, at *14 (N.D. Ohio Oct. 22, 2018) (same).

In addition, although the ALJ need only incorporate those limitations accepted as credible into the hypothetical questions, *Parks v. Social Sec. Admin.*, No. 09-6437, 2011 WL 867214, at *9 (6th Cir. March 15, 2011) (citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)), the ALJ's decision does not explain why the RFC omitted the two aforementioned restrictions. The court, therefore, cannot determine whether the ALJ's

hypothetical adequately incorporated all of Plaintiff's limitations. Absent such an explanation, the court cannot find, under the facts of this case, that the ALJ's omission was harmless error. None of the hypothetical questions posed to the VE incorporated a separate work area limitation or occasional flexibility in breaks. (Tr. 69-73). Thus, the court declines to speculate as to the impact that such limitations would have on Plaintiff's ability to perform a significant number of jobs in the national economy. Further, the burden shifts to the Commissioner at Step Five. Without the benefit of VE testimony, the court cannot discern whether the omitted restrictions would have been outcome determinative or whether it was merely harmless error.

Accordingly, the ALJ committed error by not explaining why he rejected two of the State Agency psychologists' restrictions. Alternatively, even if court concluded that the ALJ silently accepted the restrictions, then the ALJ's hypothetical questioning of the VE was deficient and the VE's testimony does not constitute substantial evidence to support the ALJ's decision at Step Five because neither addressed the two specified State Agency psychologists' restrictions. In both instances, remand is required.[3]

### VI. Conclusion

For the foregoing reasons, the Commissioner's final decision is REVERSED and REMANDED for proceedings consistent with this opinion.

IT IS SO ORDERED.

s/ *David A. Ruiz*<br>
United States Magistrate Judge

Date: September 23, 2019

---

[3] Because the court finds Plaintiff's second assignment of error determinative, the court declines to address the first assignment of error in the interests of judicial economy.